UNITED STATES of America

v.

Morris MALINSKY, Louis Rapkin, Irving Greene, Albert Pfeffer, Milton Tillinger, David Lustigman, Isidore Schwartz, Robert Barbieri, Robert Felt, Joseph Meglino, Sam Vogel, Sam Stolzenberg, also known as Sam Stowe, Defendants.

United States District Court
S. D. New York.
March 14, 1957.

See also D. C., 19 F.R.D. 426.

Paul W. Williams, U. S. Atty., New York City, for the Government, Myles J. Ambrose and William S. Lynch, New York City, of counsel.

Joseph A. Solovei, Brooklyn, for Morris Malinsky.

Jacob P. Lefkowitz, New York City, for Louis Rapkin and Irving Greene.

Maurice Edelbaum, New York City, for Albert Pfeffer and Isidore Schwartz.

Harold O. N. Frankel, New York City, for Milton Tillinger and David Lustigman.

Harry Sokel, New York City, for Joseph Meglino.

Meyer Licht, New York City, for Sam Vogel.

Joseph Panzer, New York City, for Sam Stolzenberg.

HERLANDS, District Judge.

The defendants, four of whom are or were union officials and their alleged associates charged with a conspiracy in violation of Title 18 U.S.Code § 1951, move for a change of venue or, in the alternative, for an adjournment of the trial to at least May 6, 1957, Federal Rules of Criminal Procedure, Rule 21, 18 U.S.C.

Defendants claim that they cannot obtain a fair and impartial jury trial at this time in this district, Sixth Amendment to the Constitution.

According to defendants, the current and imminent publicity incidental to pending congressional and other investigations has produced, and will continue to create, an atmosphere of public indignation and pervasive suspicion about labor union racketeering in general and about certain union officials in particular.

There is grave danger, defendants argue, that, despite evidence of their innocence, the defendants will be found guilty because the jury will, consciously or unconsciously, associate the defendants with lurid headlines and notorious malefactors.

The principles governing both branches of this motion have been clearly expounded by the courts in numerous cases. United States v. Dennis, 2 Cir., 1950, 183 F.2d 201, 226; United States v. Moran, 2 Cir., 1952, 194 F.2d 623, certiorari denied 343 U.S. 965, 72 S.Ct. 1058, 96 L.Ed. 1362; United States v. Moran, 2 Cir., 1956, 236 F.2d 361; United States v. Florio, D.C.S.D.N.Y.1952, 13 F.R.D. 296; United States v. Stein, D.C.S.D. N.Y.1956, 140 F.Supp. 761, 768; United States v. Dioguardi, D.C.S.D.N.Y.1956, 147 F.Supp. 421; Dennis v. United States, 1948, 84 U.S.App.D.C. 31, 171 F. 2d 986, 992, affirmed 339 U.S. 162, 70 S.Ct. 519, 94 L.Ed. 734; Shepherd v. State of Florida, 1951, 341 U.S. 50, 71 S.Ct. 549, 95 L.Ed. 740; Delaney v. United States, 1 Cir., 1952, 199 F.2d 107, 39 A.L.R.2d 1300; United States v. Carper,

D.C.D.C.1953, 13 F.R.D. 483; Bianchi v. United States, 8 Cir., 1955, 219 F.2d 182, certiorari denied 349 U.S. 915, 75 S.Ct. 604, 99 L.Ed. 1249. See United States v. Allied Stevedoring Corp., 2 Cir., 1957, 241 F.2d 925.

In accordance with the analysis and rationale suggested by the above decisions, the following features of the present case are of salient and controlling significance:

(1) Not a single one of the defendants has been named in any of the publicity.

(2) Of the 19 news items involved herein (Exhibits "A" to "F", attached to defendants' reply and supplemental affidavits; and Exhibits "1" to "13", attached to the Government's answering affidavit) Local 1648, the union of which four of the defendants were or are officers, is mentioned only five times (Exhibits 1, 4, 5, 6, 7). These references to Local 1648 are, for the most part, associated with references to other locals by their respective numbers, i. e., Locals 136, 246, 405, 413, 433, 1688 and 1690. The references to Local 1648 are thus obscured and diluted (Exhibits 1, 4, 5, 6, 7).

(3) Neither the subject matter of the indictment at bar nor the gist of the evidence to be adduced upon this trial has been treated in the cited news items, either generally or in connection with the defendants.

(4) Neither the Department of Justice nor the United States Attorney's Office for the Southern District of New York has been responsible for, or had any connection with, the release of the publicity complained of.

(5) Many of the news items emanated from labor officials connected with the International Union who were or are engaged in so-called house cleaning. None of the defendants herein was mentioned in such items (Exhibits 1 to 13, inclusive).

(6) A number of the news items originated out of investigations and related proceedings conducted by the District Attorney of New York County. None of these items named the defendants herein (Exhibits 1, 3, 4, 5, 6, 7 and 9).

(7) A number of the news items originated out of investigations conducted by the United States Senate Select Committee on Improper Activities in the Labor or Management Field. None of these items named the defendants herein.

(8) Only four of the 12 defendants were or are officers of Local 1648.

(9) A delay in the trial might prejudice the prosecution of this case in view of the fact that five vital Government witnesses are aged or seriously ill.

(10) The above mentioned United States Senate Committee is not planning to hold public hearings in New York City at this time. A public hearing scheduled to be held in Washington on April 9, 1957, will in no way be concerned with the activities of the Retail Clerks International Union, of which Local 1648 is merely one local.

(11) One of the items, a cartoon, does not contain the name of any union or person (Exhibit A).

(12) A number of items do not refer at all to either the Retail Clerks International Union or Local 1648, but refers to the Teamsters Union (Exhibits B, C, D, E and F).

(13) There is no evidence of adverse publicity in the form of TV or radio broadcasts or movies concerning the defendants, the indictment or the investigation leading to the indictment.

The foregoing features, considered in their totality, demonstrate clearly and convincingly that the danger to the defendants' right to a fair and impartial trial is insubstantial and conjectural. To quote Mr. Justice Holmes: " * * * Constitutional law like other mortal contrivances has to take some chances * * * " Blinn v. Nelson, 1911, 222 U.S. 1, 7, 32 S.Ct. 1, 2, 56 L.Ed. 65.

Here the chance is so remote that it dwindles to the vanishing point.

**303**

The same thought has been expressed by Mr. Justice Cardozo: "But justice, though due to the accused, is due to the accuser also. The concept of fairness must not be strained till it is narrowed to a filament. We are to keep the balance true." Snyder v. Commonwealth of Massachusetts, 1934, 291 U.S. 97, 122, 54 S.Ct. 330, 338, 78 L.Ed. 674.

The responsibility of the Court to safeguard the defendants' constitutional right to a fair and impartial trial is one that continues throughout each stage of the proceedings. Thus, the examination of the talesmen upon the voir dire furnishes a direct opportunity to determine pragmatically whether the defendants will probably obtain a fair and impartial jury. See United States v. Moran, 2 Cir., 1956, 236 F.2d 361; United States v. Dioguardi, supra, 147 F.Supp. at page 422.

In addition, the Court is in a position to give the jury appropriate instructions at the very outset of the trial and thereafter with respect to the subject of publicity. See United States v. Allied Stevedoring Corp., supra; United States v. Postma and McConnon, 2 Cir., 242 F.2d 488.

While the capacity or willingness of a jury to obey the Court's instructions has sometimes been sharply questioned, the dominant view in this circuit, recently affirmed by the Supreme Court, is that a jury will follow the trial judge's charge. United States v. Delli Paoli, 2 Cir., 1956, 229 F.2d 319, affirmed 352 U.S. 232, 77 S.Ct. 294, 1 L.Ed.2d 278.

In the Paoli case, supra, 229 F.2d at page 322, Judge Medina said:

"It is my belief that jurors generally can and do follow instructions conscientiously, in these matters as well as others."

In affirming the Court of Appeals in the Paoli case, Mr. Justice Burton, speaking for the majority, said [352 U.S. 232, 77 S.Ct. 300]:

"Based on faith that the jury will endeavor to follow the court's instructions, our system of jury trial has produced one of the most valuable and practical mechanisms in human experience for dispensing substantial justice."

The motion is denied in all respects.

If, upon the voir dire of the prospective jurors, it should appear to the defendants that there is basis for a renewal of the motion, they may, if so advised, reapply for appropriate relief.